IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                    CRIMINAL NO. 3:23-CR-26-DCB-LGI

ANTONIO ANDRADE-HERNANDEZ

MEMORANDUM OPINION & ORDER

BEFORE THE COURT is Defendant Antonio Andrade-Hernandez's ("Defendant") Motion to Dismiss Count Two of the Indictment ("Motion") [ECF No. 20]. Having reviewed the submissions of the parties, the applicable statutory and case law, and being otherwise fully informed of the premises, the Court finds as follows:

I.   Factual & Procedural Background

On April 4, 2023, a federal grand jury indicted Defendant, an alien to the United States who had previously been deported, for having knowingly and unlawfully reentered the United States in violation of 8 U.S.C. § 1326(a) and for knowingly possessing a firearm despite his status as an alien unlawfully in the United States in violation of 18 U.S.C. § 922(g)(5)(A) and 924(a)(8). [ECF No. 2] at 1. On July 3, 2023, Defendant filed the instant Motion, in which he moves the Court to dismiss count two of the indictment. [ECF No. 20].

II.  Legal Standard

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." The Fifth Circuit has held that "[t]he propriety of a motion to dismiss an indictment ... by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." United States v. Fontenot, 662 F.3d 640, 644 (5th Cir. 2011) (citations omitted). "If a question of law is involved, then consideration of the motion is generally proper." Id.

The Court also is guided by the firmly established principle that dismissal of an indictment is extraordinary and unusual relief because, unlike dispositive motion practice in civil cases, it encroaches upon the fundamental role of the grand jury. See, e.g., United States v. McFadden, 59 F.3d 1243, n. 4 (5th Cir. 1995) (dismissal of an indictment is limited to "extraordinary situations"); United States v. Fulmer, 722 F.2d 1192, 1195 (5th Cir. 1983) ("For this reason, we have held that a district court may dismiss an indictment with prejudice only where it has been shown that governmental misconduct or gross negligence in prosecuting the case has actually prejudiced the defendant.").

III. Analysis

Defendant does not dispute that count two of the indictment states an offense under 28 U.S.C. § 922(g)(5), but instead challenges the statute as unconstitutional on its face pursuant to the Supreme Court's recent decision in New York State Rifle & Pistol Assoc., Inc. v. Bruen, 142 S. Ct. 2111 (2022). This issue can properly be decided as a matter of law prior to a trial. The Court will first discuss the Supreme Court's recent Second Amendment jurisprudence before determining its applicability to this case.

a. Second Amendment Jurisprudence

The Second Amendment states that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In 2008, the Supreme Court recognized an individual right under the Second Amendment to possess firearms in common use, such as handguns, for traditionally lawful purposes, such as self-defense within the home. District of Columbia v. Heller, 554 U.S. 570, 592, 627 (2008). In McDonald v. City of Chicago, the Supreme Court applied this fundamental right against the states under the Due Process Clause of the Fourteenth Amendment. 561 U.S. 742, 778 (2010).

In Bruen, the Supreme Court expanded upon Heller and McDonald by holding that "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122. The Supreme Court also rejected and replaced the test that appellate courts had used to determine the constitutionality of firearm laws.[1] Id. at 2125. The new test follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

Id. at 2129-30 (citation omitted). This test now guides courts' analyses in resolving challenges to firearm laws. The Court, however, must first determine if this case requires a Bruen analysis.

b. Unlawful Aliens' Second Amendment Rights

The Court's first inquiry is whether the Second Amendment confers rights on the Defendant that warrant determining the constitutionality of 18 U.S.C. § 922(g)(5)(A).

---

[1] Appellate courts previously relied on a two-step history and "means-end" scrutiny that evaluated the importance of the interest advanced by the government's regulation against historical mores. Bruen, 142 S. Ct. at 2125.

As discussed supra, Defendant is an unlawful alien who resides in the United States. [ECF No. 2] at 1. Defendant concedes that although the government deported him to Mexico in March 2012, he returned to the United States only two months later. [ECF No. 20] at 5. Defendant married an American citizen in 2011 with whom he has one son. Id. Now separated, Defendant lives with his girlfriend and their three children. Id.

The Second Amendment protects "the right of the people to keep and bear arms…" U.S. Const. amend. II (emphasis added). Is Defendant, an unlawful alien to this country, among "the people" protected by the Second Amendment?

Heller indicates "the people" pertains to law-abiding citizens. 554 U.S. at 625. This follows the tradition of "not significantly regulat[ing] the possession of firearms by law-abiding citizens." Id. Bruen confirmed that "ordinary, law-abiding, adult citizens…are part of 'the people' whom the Second Amendment protects." Bruen, 142 S. Ct. at 2134 (citing Heller, 554 U.S. at 580). All the same, neither case addressed noncitizens.

In a pre-Bruen ruling, the Fifth Circuit held that the Second Amendment "does not include aliens illegally in the United States." United States v. Portillo-Munoz, 643 F.3d 437, 440-42 (5th Cir. 2011). In Portillo-Munoz, an unlawfully present

alien argued that § 922(g)(5)(A) violates the Second Amendment
on the basis that "the people" to whom the right is guaranteed
"refers to a class of persons who are part of a national
community or who have otherwise developed sufficient connection
with this country to be considered part of that community." Id.
at 440 (citing United States v. Verdugo-Urquidez, 494 U.S. 259,
265 (1990)).

The Fifth Circuit held that the "[Supreme] Court's language
in Heller [regarding the term 'the people'] invalidates
Portillo's attempt to extend the protections of the Second
Amendment to illegal aliens. Illegal aliens are not 'law-
abiding, responsible citizens' or 'members of the political
community,' and aliens who enter or remain in this country
illegally and without authorization are not Americans as that
word is commonly understood." Portillo-Munoz, 643 F.3d at 440.

Nevertheless, Defendant now argues that he is among the
national community that the Supreme Court described in Verdugo-
Urquidez. [ECF No. 20] at 4. Defendant's argument conflicts with
the Fifth Circuit's pre-Bruen Portillo-Munoz holding, which
explicitly rejected an identical argument. Portillo-Munoz, 643
F.3d at 440-42. In his reply to the Government's response to the
Motion, Defendant boldly asserts that the Fifth Circuit

abrogated all pre-<u>Bruen</u> Second Amendment caselaw, including
<u>Portillo-Munoz</u>, in <u>United States v. Rahimi</u>. [ECF No. 24] at 1.

In <u>Rahimi</u>, a three-judge panel the Fifth Circuit held that
18 U.S.C. § 922(g)(8) is unconstitutional because it unlawfully
infringes on the Second Amendment right to bear arms. 61 F.4th
443 (5th Cir. 2023), cert. granted, No. 22-915, --- U.S. ----,
2023 WL 4278450 (U.S. June 30, 2023). In so doing, the Fifth
Circuit reasoned that <u>Bruen</u> implicitly abrogated its decisions
in <u>United States v. McGinnis</u>, 956 F.3d 747 (5th Cir. 2020), and
<u>United States v. Emerson</u>, 270 F.3d 203 (5th Cir. 2001). <u>Id.</u> at
450-51. Those two decisions relied on the now-abandoned, two-
step framework that culminated in a means-end scrutiny analysis.
The Fifth Circuit in <u>Portillo-Munoz</u>, however, did not rely on
that now-abandoned analysis. Additionally, the Fifth Circuit did
not render an <u>en banc</u> decision in <u>Rahimi</u>, and <u>Bruen</u> does not
appear to be an intervening decision that would invalidate the
entire Second Amendment jurisprudence of the Fifth Circuit.[2] <u>See</u>
<u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 466 (5th Cir.
1999).

The Court must determine whether <u>Portillo-Munoz</u>'s holding—
that the Second Amendment does not convey rights to unlawful

---

[2] The Fifth Circuit is bound by the precedent of previous panels absent an
intervening Supreme Court decision or a subsequent <u>en banc</u> decision. <u>See</u>
<u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 466 (5th Cir. 1999).

aliens—applies in this <u>Bruen</u> era. The Fifth Circuit has not since <u>Bruen</u> addressed a challenge to § 922(g)(5)[3], so the Court must venture forward with its own independent evaluation.

Although <u>Bruen</u> did not address the scope of Second Amendment rights as they regard noncitizens unlawfully present in the United States, its analysis confirms the validity of the Fifth Circuit's holding in <u>Portillo-Munoz</u>. In <u>Portillo-Munoz</u>, the Fifth Circuit conducted the type of analysis required by <u>Bruen</u>'s first step in concluding that the Second Amendment's plain text did not protect the conduct of a noncitizen who is illegally present in the United States. 643 F.3d at 440-42. The Fifth Circuit then affirmed § 922(g)(5)'s constitutionality on that basis, and it did not further engage in the type of means-end scrutiny that the Supreme Court rejected in <u>Bruen</u>. <u>Id.</u> at 442.

<u>Portillo-Munoz</u> has proved itself persuasive to other courts grappling with similar issues since the <u>Bruen</u> decision. In <u>United States v. Sitladeen</u>, the Eighth Circuit held that an order denying a challenge to § 922(g)(5) need not include a <u>Bruen</u> analysis because the protections of the Second Amendment do not extend to aliens illegally in the United States. 64 F.4th

---

[3] The constitutional challenge in <u>U.S. v. Rahimi</u> regarded a separate and distinct 922(g) offense, and the Fifth Circuit did not discuss <u>Portillo-Munoz</u>. <u>See generally</u>, <u>United States v. Rahimi</u>, 61 F.4th 443 (5th Cir. 2023).

978, 983 (8th Cir. 2023). The Eighth Circuit upheld its pre-Bruen, four-sentence per curiam ruling, that relied on the Fifth Circuit's analysis in Portillo-Munoz. Id. at 983-87.

The Eighth Circuit bound itself to its pre-Bruen decision, United States v. Flores, because it based the Flores holding on an inquiry into "whether the conduct regulated by § 922(g)(5)(A) was protected by the plain text of the Second Amendment," not "by engaging in means-end scrutiny or some other interest-balancing exercise" that Bruen rejected. Id. at 985. In so doing, the Eighth Circuit endorsed its continued reliance on the Fifth Circuit's opinion in Portillo-Munoz. See United States v. Flores, 663 F.3d 1022, 1023 (8th Cir. 2011).

The Sitladeen decision notes that Bruen casts no doubt on its definition of "the people" and decided nothing about who may carry a firearm. United States v. Sitladeen, 64 F.4th at 985. In sum, the Eighth Circuit denied a § 922(g)(5) challenge absent a Bruen analysis because of the continued validity of its pre-Bruen holding in Flores that relied on the plain text of the Second Amendment and not on a rejected means-end scrutiny evaluation, just as the Fifth Circuit held in Portillo-Munoz. Id. at 987.

In United States v. Charles, a fellow district court within the Fifth Circuit favorably cited Portillo-Munoz's holding that

"the people" does not encapsulate unlawful aliens. No. MO:22-CR-00154-DC, 2022 WL 4913900, at *5 (W.D. Tex. Oct. 3, 2022). Although <u>Charles</u> regarded a separate and distinct § 922(g)(1) challenge, it endorsed <u>Portillo-Munoz</u> as binding precedent following <u>Bruen</u>. <u>Id.</u>; <u>See also</u>, <u>United States v. Collette</u>, 630 F. Supp. 3d 841, 848 (W.D. Tex. 2022).

    The Fourth Circuit also acknowledged pre-<u>Bruen</u> that the Second Amendment confers no rights to unlawful aliens. <u>United States v. Carpio-Leon</u>, 701 F.3d 974, 975 (4th Cir. 2012). Since the advent of <u>Bruen</u>, the Fourth Circuit's district courts have recognized the survival of <u>Carpio-Leon</u>'s holding. <u>See, e.g.</u>, <u>United States v. Hughes</u>, No. 2:22-CR-00640-DCN-1, 2023 WL 4205226, at *7 (D.S.C. June 27, 2023); <u>United States v. Gould</u>, No. 2:22-CR-00095, 2023 WL 3295597, at *4 (S.D.W. Va. May 5, 2023); <u>United States v. Murillo-Lopez</u>, No. 1:22-CR-180, 2023 WL 2799712, at *2 (E.D. Va. Apr. 5, 2023); <u>United States v. Jackson</u>, No. CR ELH-22-141, 2023 WL 2499856, at *6 (D. Md. Mar. 13, 2023); <u>United States of Am. v. Riley</u>, No. 1:22-CR-163 (RDA), 2022 WL 7610264, at *8 (E.D. Va. Oct. 13, 2022).

    Although the Fifth Circuit has not yet acknowledged the continued vitality of its holding in <u>Portillo-Munoz</u>, the Court feels certain based on its own evaluation and the evaluations of other courts post-<u>Bruen</u> that it is bound to hold that the Second

10

Amendment confers no rights to Defendant such that he might challenge the constitutionality of § 922(g)(5) pursuant to that amendment.[4] Therefore, the Court may deny Defendant's Motion without even reaching the test found in <u>Bruen</u>.

    c. <u>Bruen</u> Analysis

Even had the Court not denied Defendant's Motion as set out <u>supra</u>, a <u>Bruen</u> analysis would lead the Court to the same result in this case. The Court will entertain this process below.

Following <u>Bruen</u>, instead of analyzing "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right," courts ask whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. <u>Bruen</u>, 142 S. Ct. at 2126. If the regulation does govern such conduct, the court will

---

[4] The Second Amendment's prefatory clause, "[a] well-regulated Militia, being necessary to the security of a free State...," whose purpose the <u>Heller</u> court interpreted as "to prevent the elimination of the militia" also casts doubt on whether the Framers intended the individual right to bear arms to apply to noncitizens or unlawful aliens. U.S. Const. amend. II; <u>Heller</u>, 554 U.S. at 599. As early as the 1780s, at least one state excluded noncitizens from its militia; in 1792, the U.S. Congress excluded noncitizens in its militia law; many states soon after enacted similar noncitizen bans in their respective militia laws. David B. Kopel & Joseph G.S. Greenlee, <u>The Second Amendment Rights of Young Adults</u>, 43 S. Ill. U. L.J. 495, 533-596 (2019). The <u>Heller</u> court recognized that the Second Amendment's militia purpose was the most politically prescient because of past English and colonial disarmament efforts, which the Antifederalists feared would reoccur if they failed to codify the old English right to bear arms in the Bill of Rights. 554 U.S. at 592, 594, 598-603. Although not conclusive, this reasoning lends credence to the argument that the Second Amendment does not include noncitizens.

uphold it only if the government can "identify an American tradition justifying" the regulation. Id. at 2138.

For the government to make this showing, it need not point to a "historical twin," but only an analogous, i.e., "relevantly similar," historical regulation that imposed "a comparable burden on the right of armed self-defense" and that was "comparably justified." Id. at 2132-33. Regulations in effect at or near the time of the Second Amendment's ratification carry more weight in the analysis than those that existed long before or after that period because "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." Id. at 2136.

1. Plain Text

"[T]he Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" Bruen, 142 S. Ct. at 2143 (quoting Heller, 554 U.S. at 627). Therefore, carrying a firearm in common use would ordinarily fall under the protection of the plain text of the Second Amendment.

As discussed in detail above, the Court is bound by and comfortably follows Fifth Circuit precedent to hold that the Defendant, an unlawful alien, is not part of "the people" protected by the Second Amendment. Portillo-Munoz, 643 F.3d at

440-42. Therefore, Defendant's conduct—possessing a firearm
while an unlawful alien—cannot be covered by the plain text of
the Second Amendment. As the Court is assuming, arguendo,
otherwise, it will continue to the second stage of the Bruen
analysis.

   2. Historical Tradition

   At this stage, Bruen requires that the Government
"demonstrate that [§ 922(g)(5)] is consistent with this Nation's
historical tradition of firearm regulation." Bruen, 142 S. Ct.
at 2126. Courts at this stage recognize that although Congress
did not derive § 922(g)(5) from colonial-era laws, it can be
analogized to other colonial era regulations. See, e.g., United
States v. Pierret-Mercedes, 2023 WL 2957728, at *5 (D.P.R. Apr.
14, 2023); United States v. Leveille, 2023 WL 2386266, at *4-5
(D.N.M. Mar. 7, 2023); United States v. DaSilva, 2022 WL
17242870, at *10 (M.D. Pa. Nov. 23, 2022). Analogizing similar
laws satisfies the test under Bruen. 142 S. Ct. at 2132.

   Courts may "determin[e] whether a historical regulation is
a proper analogue for a distinctly modern firearm regulation" by
assessing "whether the two regulations are 'relevantly
similar.'" Id. Despite Defendant's protestations, the Government
has met this burden by citing numerous analogous historical
restrictions enacted before, during, and after the American

13

Revolution that disarmed individuals outside of the political community. [ECF No. 21] at 8-11.

The Government first noted that gun ownership laws two centuries ago ran parallel to those extending the franchise. Id. at 8-9. (citing United States v. Perez, 6 F.4th 448, 462 n.4 (Menashi, J., concurring in the judgment)(2d Cir. 2021). The Government then cited colonial era laws that precluded certain groups from gun ownership without first swearing an oath of loyalty to the British crown. Id. at 6-9. During the American Revolution, legislatures disarmed those who either refused to "swear[] fidelity to the revolutionary regime," "who defamed resolutions of the Continental Congress," or "who were unwilling to abide by…legal norms." Range v. Atty Gen., 69 F.4th 96, 125 (3rd Cir. 2023) (Judge Krause, dissenting). These laws restricted from firearm ownership those already excluded from the political community of the time around the ratification of the Second Amendment. Therefore, they are analogous and "relevantly similar" to the modern § 922(g)(5). Bruen, 142 S. Ct. at 2132. Had the Court fully relied on this stage of the analysis, it would have held that the Government met its burden.

IV.  Conclusion

As discussed supra, the Court remains bound by the Fifth Circuit's ruling in Portillo-Munoz in determining whether the

Second Amendment conveys rights to unlawful aliens. The answer is no. Therefore, the Court may deny Defendant's Motion [ECF NO. 20] without relying on its <u>Bruen</u> analysis. Nevertheless, the Court would have arrived at the same result had it relied on its <u>Bruen</u> analysis, because the Government has met its burden in showing analogous and relevantly similar laws such that the Court recognizes that 18 U.S.C. § 922(g)(5) is consistent with the nation's historical tradition of firearm regulation.  For the foregoing reasons, Defendant's Motion [ECF No. 20] shall be denied.

ACCORDINGLY,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Count Two of the Indictment [ECF No. 20] is DENIED.

SO ORDERED, this 27th day of July, 2023.

/s/ David Bramlette
DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE